1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RALPH JOSEPH MATHERS,

           Plaintiff,

        v.

TESORO REFINING AND MARKETING
COMPANY, a foreign corporation; BRAND
SCAFFOLD BUILDERS INC., a foreign
corporation,

           Defendants.

CASE NO. C05-172BHS

MEMORANDUM DECISION
INCORPORATING
FINDINGS OF FACT AND
CONCLUSIONS OF LAW

This matter came before the Court on the bench trial conducted on May 12, 2008, through May 15, 2008. Dkts. 79-81. The Court has considered the testimony and arguments at trial, exhibits and deposition testimony admitted into evidence, the parties' briefing, and the remainder of the file and hereby finds for Defendants Tesoro Refining and Marketing Company ("Tesoro") and Brand Scaffold Builders Inc. ("Brand") for the reasons stated herein.

## I. SUMMARY OF THE CASE

This is a third-party action for personal injuries arising out of an industrial accident occurring on or about March 20, 2002, at Tesoro's Anacortes Oil Refinery in Skagit County, Washington. Mr. Mathers, a former employee of subcontractor Kellogg, Brown & Root, alleges that he struck his head on scaffolding erected by Brand, a subcontractor of Tesoro, and suffered permanent, disabling spinal injuries precluding his return to work as a pipe fitter, machinist, or

MEMORANDUM DECISION  - 1

any other gainful employment on a reasonably continuous basis. Plaintiff seeks both economic and non-economic damages.

## II. JURISDICTION

The Court has jurisdiction over the parties and has subject matter jurisdiction by virtue of 28 U.S.C. § 1332. Plaintiff Ralph Joseph Mathers is a citizen of Washington. Tesoro and Brand are foreign corporations. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

## III. FINDINGS OF FACT

Based upon the testimony at trial and the admitted exhibits, the Court makes the following findings of fact:

On March 20, 2002, Plaintiff Ralph Joseph Mathers was employed as a temporary pipe fitter by Kellogg, Brown & Root, a subcontractor working at the Tesoro refinery in Anacortes, Washington, on a "turnaround" (retrofit) project. Plaintiff began working with Kellogg, Brown & Root in January of 2002 and was not an employee of Defendants.

Plaintiff's work on the turnaround project began in early January of 2002 and concluded with the completion of the project at the end of March 2002. Plaintiff's work involved the installation of digital instruments on the catalytic cracker unit ("CCU") at the refinery. Brand had no control over, and had no right to control, where and when Plaintiff would work, or the tasks he would perform.

Tesoro had the authority to issue permits approving when and where Plaintiff would work. This authority was limited to ensuring that the area in which Plaintiff would be working was free of hazardous energy, such as heat, electricity, and hydrocarbon. Tesoro otherwise had no control over, and had no right to control, when and where Plaintiff would work and had no right to control the tasks Plaintiff would perform. Kellogg, Brown & Root, Plaintiff's employer, had exclusive control over where and when Plaintiff would work and the tasks he would perform. Kellogg, Brown & Root was solely responsible for Plaintiff's safety training and

MEMORANDUM DECISION  - 2

supervision with respect to the turnaround project and was solely responsible for providing Plaintiff with safety equipment.

On March 20, 2002, Brand was a subcontractor working at the Tesoro Refinery and erected certain scaffolding used on the turnaround project. On or about March 20, 2002, while employed by Kellogg, Brown & Root and while working on the CCU at the Tesoro refinery, Plaintiff struck his head on a crossbar. The crossbar was either part of a temporary scaffold or a more permanent structure. Plaintiff was wearing a hard hat at the time of injury.

The bump to Plaintiff's head resulted in injury to his neck. Plaintiff's neck injury aggravated a preexisting disc disease attributable to degenerative arthritis and wear and tear on Plaintiff's neck. This condition was particularly evident at the C3 and C4 level of the cervical spine.

Plaintiff did not seek medical treatment for the injuries he claims to have sustained in the accident until May of 2002. Plaintiff continued to work as a pipe fitter at the refinery for ten days following the claimed date of injury, until Kellogg, Brown & Root completed the project at the refinery and Plaintiff was laid off.

While the Court finds sufficient evidence that Plaintiff experienced an accident at the jobsite, the Court finds that the timing and circumstances of such accident are ambiguous. While Plaintiff testified that the accident occurred on March 20, 2002, Kellogg, Brown & Root had no record of Plaintiff being present at the refinery on that day. There was insufficient evidence at trial to resolve or explain this inconsistency.

The Court finds that Plaintiff did not report the accident to Tom Hess on the day of the accident. Plaintiff's testimony that he reported the accident to Mr. Hess and that Mr. Hess was dismissive and nonresponsive is not credible in light of testimony from Billy Foxworth and witnesses on behalf of the defense that Mr. Hess is a very conscientious supervisor who took jobsite safety very seriously. Plaintiff acknowledged at trial that Mr. Hess denied receiving a report of the accident. It is unfortunate that the circumstances surrounding Plaintiff's accident

MEMORANDUM DECISION  - 3

1    are not more clear. Had Plaintiff followed safety directives and formally reported the accident,

2    the facts surrounding the incident might have been better established at trial.

3         The Court also finds that Plaintiff failed to establish the location of the accident by a

4    preponderance of the evidence. In his testimony at trial, Plaintiff seemed certain as to the

5    location of the accident. Yet, according to Jeffrey Waldron, Plaintiff appeared confused and

6    unable to easily identify the scene of the accident during a site visit attended by Plaintiff,

7    attorneys for the parties, and employees of Tesoro and Brand.

8         In addition, photographs depicting the scaffolding at the alleged scene of the accident on

9    the seventh floor of the CCU were not clearly consistent with digitally-produced images offered

10   by Plaintiff to establish that the walkway was obstructed by scaffolding. Tesoro produced

11   persuasive evidence that the pathway was not obstructed by scaffolding. Mr. Waldron testified

12   that the standard height for scaffolding was seven feet. Richard Boswell had serious doubts as to

13   whether there was any scaffolding on the seventh deck on March 20, 2002. Mr. Boswell testified

14   that Brand would not have constructed a walkway obstruction under six feet and that the head

15   clearance at the lowest point would have been six feet and four inches. The area in which the

16   injury is alleged to have occurred was traveled frequently, without incident, by people taller than

17   Mr. Mathers. In addition, the specific piece of scaffolding alleged to have caused Plaintiff's

18   injury would have constituted surplusage, would not have served any particular purpose, and

19   would not be attributable to the area being in a state of construction or deconstruction.

20        The only testimony supporting Plaintiff's account of the accident location was that of

21   Billy Foxworth. Taken as a whole, this testimony was unpersuasive, as Mr. Foxworth

22   acknowledged that he had no specific recollection as to the specific time or date of the accident.

23   Moreover, Mr. Foxworth recalled that the accident occurred on a passageway but was unsure of

24   the exact pathway where the accident occurred.

25        Plaintiff attempted to bolster his contention that the scaffolding obstructed the

26   passageway by demonstrating the location of instruments on the main vessel. While such

27   instruments appeared to be at eye level, there was no persuasive reason to conclude that the

28   MEMORANDUM DECISION  - 4

appearance of instruments in photographs taken after the alleged date of the accident was attributable to the installation of such instruments from a deck on scaffolding located above the seventh floor passageway. The Court finds that it is equally likely that such instruments would have been installed without the aid of scaffolding because it would have been more awkward to install the instruments at foot level on a scaffold just above eye level while standing on the passageway. Moreover, the evidence at trial established that the purpose of the scaffolding was to facilitate installation of insulation in the piping.

Therefore, while Plaintiff contends that the instrument causing his injury was unmarked scaffolding obstructing the walkway on the seventh deck, the Court finds, by a preponderance of the evidence, that the seventh deck walkway on which the injury is alleged to have occurred was not blocked by overhead scaffolding and that it is equally likely that any scaffolding was erected at heights of six feet or higher.

Finally, the Court finds that the alleged area in which Plaintiff was injured was lit with permanent lighting and was exposed to natural lighting such that a reasonable person traveling in the area would have an unobstructed view. The presence and configuration of scaffolding on the jobsite was open and obvious and was, or should have been, a condition known to Plaintiff during his work at the refinery.

## IV. CONCLUSIONS OF LAW

At common law, employers are generally not liable for injuries to employees of independent contractors. *Stute v. P.B.M.C., Inc*, 114 Wn.2d 454, 460 (1990). There are common law, statutory, and contractual exceptions to this rule of liability. *Tauscher v. Puget Sound Power and Light Co.*, 96 Wn.2d 274, 277 (1981). Mr. Mathers seeks to impose liability against Tesoro by employing two common law and one statutory exception.

First, Mr. Mathers contends that Tesoro retained control over the work such that imposition of a duty to guard against the danger allegedly causing Plaintiff's injury is proper. Second, Mr. Mathers contends that the work he was performing was inherently dangerous.

MEMORANDUM DECISION  - 5

1    Third, Mr. Mathers contends that RCW 49.17.060 provides a statutory exception that applies to

2    this case.

3          Mr. Mathers contends that Brand's construction of the scaffolding was negligent and was

4    abnormally dangerous.

5    **A.    RETAINED CONTROL EXCEPTION (TESORO)**

6          There is a common law exception to the rule of nonliability of employers for the injury to

7    independent contractors if the employer retains control over some portion of the work, in which

8    case the employer owes a duty of care. *Id.*; *see also Kamla v. Space Needle Corp.*, 147 Wn.2d

9    114, 119 (2002) ("retained control exception"). The employer's duty is limited to the scope of

10   the employer's control. *Kelley v. Howard S. Wright Const. Co.*, 90 Wn.2d 323, 330 (1978). The

11   relevant inquiry is whether the employer had the right to exercise control over the work of the

12   subcontractor and not whether the employer actually interfered with the subcontractor's work.

13   *Id.*; *see also Kamla*, 147 Wn.2d at 122 ("the proper inquiry [is] whether there is a retention of

14   the right to direct the manner in which the work is performed, not simply whether there is an

15   actual exercise of control over the manner in which the work is performed."). General

16   contractors are responsible for "assur[ing] that reasonable steps within [their] supervisory and

17   coordinating authority are taken to guard against readily observable, avoidable dangers in

18   common work areas which create a high degree of risk to a significant number of workmen."

19   *Kelley*, 90 Wn.2d at 332.

20         The Court concludes, as a matter of law, that Chicago Bridge & Iron was the general

21   contractor on the turnaround project and that Tesoro was a jobsite owner but was not a general

22   contractor.

23         The Court further concludes that Tesoro did not retain the right to exercise control over

24   Plaintiff's work and the manner in which it was performed. Tesoro's right to control Plaintiff's

25   work was limited to receiving advance notice of the locations in which Mr. Mathers was

26   instructed to work by his employer so that Tesoro could first ensure that the area was free of

27

28   MEMORANDUM DECISION  - 6

hazardous energy. The Court therefore concludes as a matter of law that Tesoro is not liable at common law.

**B.    STATUTORY LIABILITY (TESORO)**

Plaintiff also asserts liability under RCW 49.17.060, which provides as follows:

> Each employer:
> (1) Shall furnish to each of **his employees** a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees: PROVIDED, That no citation or order assessing a penalty shall be issued to any employer solely under the authority of this subsection except where no applicable rule or regulation has been adopted by the department covering the unsafe or unhealthful condition of employment at the work place; and
> (2) Shall comply with the rules, regulations, and orders promulgated under this chapter.

RCW 49.17.060 (emphasis added). The employer's liability differs depending upon which subsection of RCW 49.17.060 is invoked. Under subsection (1), employers have a general duty to protect only their own employees from recognized hazards not addressed by specific safety regulations.

Under subsection (2), however, employers have a specific duty to comply with WISHA regulations. An employer may only be held liable to independent contractors under subsection (2), under which all employees working on the premises are protected. *Stute*, 114 Wn.2d at 457.

If both the general and subcontractor fit the statutory definition of "employer" (RCW 49.17.020(4)), the general contractor bears the primary responsible for worker safety because the general contractor is "in the best position to ensure compliance with safety regulations." *Id.* at 463. *Stute* imposed per se liability on general contractors as a matter of policy. *Id.*; *Kamla*, 147 Wn.2d at 122.

In *Kamla v. Space Needle Corp.*, the Washington Supreme Court held that jobsite owners are not per se liable under RCW 49.17.060 and that jobsite owners do not play a role sufficiently analogous to general contractors to justify imposing a nondelegable duty to ensure WISHA compliance when there is no general contractor:

> Although jobsite owners may have a similar degree of authority to control jobsite work conditions, they do not necessarily have a similar degree of knowledge or expertise about WISHA compliant work conditions. Jobsite owners can run the

MEMORANDUM DECISION  - 7

gamut from an owner/developer with the same degree of knowledge about WISHA compliant work conditions as that of a general contractor to a public corporation without any knowledge about WISHA regulations governing a specific trade. Because jobsite owners may not have knowledge about the manner in which a job should be performed or about WISHA compliant work conditions, it is unrealistic to conclude all jobsite owners necessarily control work conditions. Instead, some jobsite owners may reasonably rely on the contractors they hire to ensure WISHA compliance because those jobsite owners cannot practically instruct contractors on how to complete the work safely and properly.

*Kamla*, 147 Wn.2d at 123-25. Therefore, jobsite owners may only be held liable under subsection (2) if they retain control over the manner in which the independent contractor completes its work. *Id.* at 125.

The Court concludes that Tesoro was not Plaintiff's employer and that Tesoro is therefore not liable under RCW 49.16.060(1) as a matter of law.

Tesoro was not a general contractor but was instead a jobsite owner at the refinery. The Court further concludes that Tesoro neither retained nor exercised control over the manner in which Mr. Mathers completed his work. The Court therefore concludes that Tesoro is not liable under RCW 49.17.060(2).

## C.    NEGLIGENCE (BRAND)

To support a claim for negligence, a party must prove (1) the existence of a duty owed to the injured party; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach is the proximate cause of the injury. *Hansen v. Friend*, 118 Wn.2d 476, 485 (1992). Whether there is a duty owed to the injured party is a question of law. *Patrick v. Sferra*, 70 Wn. App. 676, 683 (1993).

Mr. Mathers contends that Brand negligently constructed scaffolding that was dangerously low, unmarked, and not well lit. Mr. Mathers fails to establish by a preponderance of the evidence that he was injured by scaffolding. Moreover, in light of the Court's findings that any scaffolding was likely erected at heights of at least six feet, that the area in which the injury is alleged to have occurred was illuminated by artificial and natural lighting, and that the precise

1  location of the accident is unknown, the Court concludes that Brand did not breach any duty

2  owed to Plaintiff and did not commit negligence.

3  **D.    INHERENTLY DANGEROUS ACTIVITY (TESORO AND BRAND)**

4        While an employer's liability generally does not extend to employees of independent

5  contractors even if there are inherently dangerous activities, there is a possible exception if the

6  owner or general contractor knew of the inherent hazards of the work and was in a position to

7  protect against those hazards. *Tauscher*, 96 Wn.2d at 279.

8        The Washington Supreme Court has recognized three compelling policy reasons for

9  declining to extend this exception to employees of independent contractors who are engaged in

10 the hazardous work: First, the rationale for finding an exception to nonliability, to prevent the

11 owner from shifting liability by hiring an independent contractor, does not apply because an

12 owner employing an independent contractor is liable for its own negligence, for negligent hiring

13 of the independent contractor, and for injuries caused by latent defects on the land. *Id.* at 281-82.

14 Second, Washington's workers' compensation system releases employers from financial

15 responsibility for employees' workplace injuries, and employers should not be subject to greater

16 liability for employees of independent contractors than for their own employees. *Id.* at 282.

17 Third, imposing liability would discourage the employment of experienced independent

18 contractors specializing in hazardous work and would encourage employers to rely on their own

19 employees, who may be less skilled. *Id.* Under this authority, Tesoro cannot be held liable for

20 dangers inherent to the work Mr. Mathers was doing at the refinery.

21       In addition, Mr. Mathers's role at the refinery has some bearing on the Court's

22 determination as to whether the cause of Mr. Mathers's injury was inherently dangerous. *See*

23 *Tauscher*, 96 Wn.2d at 280 ("Although electrical work is considered by most to be an inherently

24 dangerous activity, it is not necessarily inherently dangerous to experienced linemen."). In

25 *Kelley*, the court held that "[w]ork in which employees are required to walk over bare beams

26 more than 25 feet above the ground, and sometimes even higher, is inherently dangerous" and

27

28 MEMORANDUM DECISION  - 9

1    that the general contractor "was certainly aware of the hazards involved in such work, and

2    therefore had a duty to take precautions against those hazards." *Kelley*, 90 Wn.2d at 332.

3         Washington has adopted the Restatement's definition of abnormally dangerous activities:

4         In determining whether an activity is abnormally dangerous, the following factors
          are to be considered:

5             (a) existence of a high degree of risk of some harm to the person, land or
          chattels of others;

6             (b) likelihood that the harm that results from it will be great;
              (c) inability to eliminate the risk by the exercise of reasonable care;

7             (d) extent to which the activity is not a matter of common usage;
              (e) inappropriateness of the activity to the place where it is carried on; and

8             (f) extent to which its value to the community is outweighed by its
          dangerous attributes.

9    *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 6 (1991).

10        Here, work in which employees walk in, around, or under scaffolding erected at a height

11   of no less than six feet, even if unmarked, is not inherently hazardous or abnormally dangerous.

12   Furthermore, in light of the Court's findings of fact regarding the likely height of the

13   scaffolding, the illumination of the area in which the accident allegedly occurred, and the

14   uncertainty of the exact location of the accident, the Court concludes that there is no causation

15   upon which to base liability.

16        Therefore, it is hereby **ORDERED** that, consistent with the findings of fact and

17   conclusions of law stated herein, the Clerk of Court shall enter judgment in favor of Defendants

18   Tesoro Refining and Marketing Company and Brand Scaffold Builders, Inc.

19        DATED this 20th day of May, 2008.

20

21

22

23   _____
     BENJAMIN H. SETTLE
24   United States District Judge

25

26

27

28   MEMORANDUM DECISION  - 10